J-S04024-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA,  :   IN THE SUPERIOR COURT OF
                                                     :              PENNSYLVANIA
                   Appellee        :
                                                     :
            v.                        :
                                                     :
JERMAINE SHOCKLEY,               :
                                                     :
                   Appellant      :        No. 1042 EDA 2013


Appeal from the PCRA Order Entered March 5, 2013,
In the Court of Common Pleas of Delaware County,
Criminal Division, at No. CP-23-CR-0008078-2007.


BEFORE:  BENDER, P.J., SHOGAN and FITZGERALD*, JJ.

MEMORANDUM BY SHOGAN, J.:                    **FILED DECEMBER 17, 2014**

Appellant, Jermaine Shockley, appeals from the order denying his

petition for relief filed pursuant to the Post Conviction Relief Act ("PCRA"),

42 Pa.C.S. §§ 9541-9546.  In addition, counsel has filed an application

seeking to withdraw.  We grant counsel's application to withdraw and affirm

the order of the PCRA court.

The trial court summarized the facts of this case as follows:

> Ronald Carter was selling drugs at 10th and Potter Street in
> the early morning hours of February 2, 2006. [Appellant] and
> [his brother, Michael Shockley ("Michael")] were selling drugs at
> the same corner and carrying guns.  After midnight, [Hooks, a
> rival drug dealer,] arrived and said to [Appellant] and [Michael]
> that "it was all over … that they ain't going to hustle out there…."
> Hooks intended this to mean that the corner at 10th and Potter
> Streets was his sales territory, [Appellant's]  and  [Michael's]

---

*Former Justice specially assigned to the Superior Court.

"shift" for selling drugs had ended, and it was now his (Hooks') "shift." [Appellant] and [Michael] argued with Hooks but then left the scene to smoke PCP in a nearby house. Hooks entered another house.

Sensing danger, Carter walked away toward his house. Subsequently, when Hooks emerged from the house, Carter saw [Appellant] and [Michael] shooting at Hooks while Hooks attempted to run away. Hooks ran into an alley and fell, but [Appellant] stood almost directly over him and continued shooting even as Hooks cried: "You all going to kill me now?"

Hooks' aunt, Kathleen Davis, saw [Appellant] and another man standing over Hooks and shooting him multiple times. She then saw [Appellant] and the other man (whom she later learned was [Michael]) run away from the crime scene.

A third witness, Victoria Brown, testified that on the night of the shooting, she was talking to Hooks at 10th and Potter Streets when [Appellant] and [Michael] said "something disrespectful" to her. Hooks told [Appellant] and [Michael] that "it wasn't nice to talk to an adult like that…." Brown turned the corner and heard gunshots moments later. She then saw Hooks lying on the ground. Brown later picked [Appellant] out of photo arrays as an individual involved in Hooks' homicide.

After the shooting, [Appellant] told Carter that Hooks "deserved it. He was a rat." Carter did not tell the police about any of these events for "quite a few months" due to fear that he would suffer the same fate as Hooks if he talked.

Raymond Holmes testified that [Appellant] told him that the following took place: on the night of the murder, he [Appellant] and [Michael] were smoking PCP with another male, Assad, and two women. [Appellant] told the others that "they were going to show them who the real [expletive] were in the neighborhood, who the real gangsters were…. He said, you know, they were basically hyping themselves up." Assad gave [Appellant] a .45 automatic handgun and showed [Appellant] that there was a live round in its chamber. [Appellant] put the gun in his pants and went outside with [Michael]. Hooks was outside on 10th Street. [Appellant] and [Michael] ran towards

Hooks and started shooting. [Appellant] admitted that while Hooks was lying on the ground, he walked up and shot him two more times. [Appellant, Michael,] and Assad drove to Aston. During the trip, [Appellant] brandished this gun and threatened to kill Assad, but [Michael] talked him out of it[,] and Assad promised not to tell about Hooks' murder. [Appellant] later drove past the scene of the crime, exultant about his deed: "[W]hen they rolled past, they rolled past a memorial, and…there was people outside with teddy bears or whatever, and it was marked off. And [Appellant] said he was just laid back in the car, like—relishing it. Like, yeah, I did that. That's my work." He then visited a female cousin, who embraced him and said "yeah, I heard about what you did, and yeah, you got that [expletive], and you put work in. Yeah, my little cousin, the [gangster]…." Subsequently, when Carter testified against [Appellant] at a preliminary hearing, [Appellant] asked Holmes to "lie for [Appellant] and give a statement to [Appellant's] lawyer that Ron [Carter] told [Holmes] that he never saw what happened." Holmes gave this statement to a defense investigator but later decided to disclose [Appellant's] confession.

The Commonwealth's forensic pathologist, Frederic Hellman, M.D., testified that Hooks died from multiple gunshot wounds, and that the manner of death was homicide.

Trial Court Opinion, 11/24/09, at 2-5 (citations to record omitted).

On June 12, 2009, a jury convicted Appellant of first-degree murder and a firearms violation. On July 27, 2009, the trial court sentenced Appellant to serve a term of life in prison without parole for the first-degree murder conviction and a concurrent term of incarceration of three and one-half to seven years for the firearms violation. We affirmed Appellant's judgment of sentence, and, on August 8, 2011, our Supreme Court denied Appellant's petition for allowance of appeal. *Commonwealth v. Shockley*,

11 A.3d 1016 (Pa. Super. 2010) (unpublished memorandum), *appeal denied*, 26 A.3d 483 (Pa. 2011).

Subsequently, on May 17, 2012, Appellant filed a timely *pro se* PCRA petition.  The PCRA court appointed PCRA counsel on May 21, 2012.  An amended PCRA petition was filed by PCRA counsel on January 4, 2013.[1]  On March 5, 2013, the PCRA court entered an order dismissing Appellant's PCRA petition.  Although PCRA counsel did not move to withdraw his appearance, the March 5, 2013 order of the PCRA court also stated the following, *sua sponte*:

> 2.  The appearance of Scott Galloway, Esquire, as counsel for [Appellant] is withdrawn upon entry of this Order.

Order, 3/5/13, at 1.  Thereafter, Appellant filed a timely *pro se* notice of appeal.

---

[1] As this court explained in **Commonwealth v. Markowitz**, 32 A.3d 706 (Pa. Super. 2011):

> Amended petitions are required on first-time PCRA cases, **Commonwealth v. Tedford**, 566 Pa. 457, 781 A.2d 1167, 1171 (Pa. 2001), and the PCRA court is only permitted to address issues raised in a counseled petition. **See Commonwealth v. Pursell**, 555 Pa. 233, 724 A.2d 293, 302 (Pa. 1999) ("We will not require courts considering PCRA petitions to struggle through the *pro se* filings of defendants when qualified counsel represent those defendants."); **see also Commonwealth v. Jette**, 23 A.3d 1032 (Pa. 2011) (discussing bar against hybrid representation during PCRA review).

**Markowitz**, 32 A.3d at 713 n.5.

On April 8, 2014, this Court filed a memorandum decision remanding this matter to the PCRA court for appointment of counsel to handle Appellant's PCRA appeal. In addition, this Court directed that appointed counsel was to file a Pa.R.A.P. 1925(b) statement and that the PCRA court was to prepare a Pa.R.A.P. 1925(a) opinion.

On April 14, 2014, the PCRA court reappointed Scott Galloway to serve as counsel for Appellant. Appointed counsel filed a Pa.R.A.P. 1925(b) statement on June 18, 2014. The PCRA court then issued its Pa.R.A.P. 1925(a) opinion on June 25, 2014.

On August 22, 2014, PCRA counsel filed a motion to withdraw as counsel; he also filed with this Court a sufficient **Turner/Finley**[2] document.[3] When counsel seeks to withdraw representation in a collateral appeal, the following conditions must be met:

---

[2] **Commonwealth v. Turner**, 544 A.2d 927 (Pa. 1988); **Commonwealth v. Finley**, 550 A.2d 213 (Pa. Super. 1988) (*en banc*).

[3] We note with disapproval the fact that counsel for Appellant includes in the **Turner/Finley** letter a discussion pertaining to the timeliness of the instant PCRA petition and concludes that the PCRA petition was not timely filed. Likewise, the Commonwealth's appellate brief to this Court contains a discussion addressing the timeliness of the instant PCRA petition. We presume PCRA counsel and the Commonwealth were confused as to the timing of when Appellant's judgment of sentence became final and the actual filing of the instant PCRA petition. However, as previously stated, the instant PCRA petition was timely filed. This confusion on the part of PCRA counsel has not hindered our review, nor altered our ultimate decision that the issue preserved in the amended PCRA petition, and raised in the Pa.R.A.P. 1925(b) statement lacks merit.

1)    As part of an application to withdraw as counsel, PCRA counsel must attach to the application a "no-merit" letter[;]

2)    PCRA counsel must, in the "no-merit" letter, list each claim the petitioner wishes to have reviewed, and detail the nature and extent of counsel's review of the merits of each of those claims[;]

3)    PCRA counsel must set forth in the "no-merit" letter an explanation of why the petitioner's issues are meritless[;]

4)    PCRA counsel must contemporaneously forward to the petitioner a copy of the application to withdraw, which must include (i) a copy of both the "no-merit" letter, and (ii) a statement advising the PCRA petitioner that, in the event the trial court grants the application of counsel to withdraw, the petitioner has the right to proceed *pro se*, or with the assistance of privately retained counsel;

5)    The court must conduct its own independent review of the record in light of the PCRA petition and the issues set forth therein, as well as of the contents of the petition of PCRA counsel to withdraw; and

6)    The court must agree with counsel that the petition is meritless.

**Commonwealth v. Daniels**, 947 A.2d 795, 798 (Pa. Super. 2008) (internal punctuation marks omitted) (citing **Commonwealth v. Friend**, 896 A.2d 607, 615 (Pa. Super. 2006)).

In the present case, counsel has complied with the requirements for withdrawal from a collateral appeal.  In the motion filed with this Court, counsel alleged that he has reviewed the case, evaluated the issues, and concluded that, as expressed in the no merit letter, the appeal lacks merit. Counsel has also listed the issue relevant to this appeal, and explained why,

in his opinion, it is without merit. In addition, counsel has averred that he has sent to Appellant a copy of his motion to withdraw and the no merit letter, which advises Appellant of his right to proceed *pro se* or through privately retained counsel. Thus, we will allow counsel to withdraw if, after our review, we conclude that the issue relevant to this appeal lacks merit.

We have discerned the following issue, which was presented by PCRA counsel on behalf of Appellant in the Pa.R.A.P. 1925(b) statement:

> 1. Was the [PCRA] Court in error for dismissing [Appellant's Amended P[PCRA] Petition in that he was sixteen (16) years of age when committing the offense to which he was convicted (First Degree Murder) pursuant to Miller v. Alabama?

Pa.R.A.P. 1925(b) Statement, 6/18/14, at 1. In support of this issue on appeal, Appellant purports to argue that the United State Supreme Court's holding in **Miller v. Alabama**, ___ U.S. ___, 132 S.Ct. 2455 (2012), wherein it held a mandatory sentence of life without the possibility of parole imposed on a juvenile convicted of a homicide offense is unconstitutional, rendered Appellant's sentence unconstitutional because Appellant was sixteen years old, and thus a minor at the time of his offense.

Our standard of review of an order denying PCRA relief is whether the record supports the PCRA court's determination and whether the PCRA court's determination is free of legal error. **Commonwealth v. Phillips**, 31 A.3d 317, 319 (Pa. Super. 2011) (citing **Commonwealth v. Berry**, 877 A.2d 479, 482 (Pa. Super. 2005)). The PCRA court's findings will not be

disturbed unless there is no support for the findings in the certified record. *Id*. (citing *Commonwealth v. Carr*, 768 A.2d 1164, 1166 (Pa. Super. 2001)).

In *Miller*, the United States Supreme Court held that sentencing a juvenile convicted of a homicide offense to mandatory life imprisonment without parole violates the Eighth Amendment's prohibition against cruel and unusual punishment. Accordingly, such sentences cannot be imposed unless a judge or jury first considers mitigating circumstances. *Miller*, 132 S.Ct. at 2475.[4] However, the Pennsylvania Supreme Court determined that *Miller* does not apply retroactively to an inmate, convicted as a juvenile, who is serving a sentence of life imprisonment without the possibility of parole and who has exhausted his direct appeal rights and is proceeding under the PCRA. *Commonwealth v. Cunningham*, 81 A.3d 1, 11 (Pa. 2013). Furthermore, we observe that on June 9, 2014, the United States Supreme Court declined to grant *certiorari* in *Cunningham*. *Cunningham v. Pennsylvania*, ___ U.S. ___, 134 S.Ct. 2724 (2014). Thus, the Pennsylvania Supreme Court's decision in *Cunningham* is final and binding. Accordingly, although Appellant was sixteen years old at the time he

---

[4] We observe that on October 15, 2012, effective immediately, the Pennsylvania Legislature amended 18 Pa.C.S. § 1102(a)(1) (first-degree murder) and (b) (second-degree murder), to provide sentencing standards for juvenile offenders **convicted** of first- and second-degree murder **after June 24, 2012**, so as to comply with *Miller*.

committed the underlying murder, **Miller** is inapplicable as it does not apply retroactively to Appellant's PCRA petition. Appellant is not entitled to relief on this issue. **Cunningham**.

In summary, it is our determination that Appellant failed to present an issue warranting relief. Also, having determined after independent review of the record that the issue raised does not support a grant for relief, we allow counsel to withdraw.

Motion to withdraw granted. Order affirmed. Jurisdiction relinquished.

Justice Fitzgerald joins this Memorandum.

Judge Bender files a Concurring Memorandum in which Justice Fitzgerald joins.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/17/2014